No. 25-20383

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

MIA SEARLES, ADMINISTRATOR OF THE ESTATE OF JALEN RANDLE; TIFFANY RACHEL; WARREN RANDLE; S.S., MINOR,

*Plaintiffs - Appellants*

v.

CITY OF HOUSTON; TROY FINNER; JOHN DOES 1-10; SHANE C. PRIVETTE,

*Defendants - Appellees*

On appeal from Civil Action No. 4:24-CV-01534 in the United States District Court for the Southern District of Texas, Houston Division

## Brief of Appellees

ARTURO G. MICHEL
City Attorney

CHRISTY L. MARTIN
Chief, Torts and Civil Rights

Robert W. Higgason
Senior Assistant City Attorney
SBN: 09590800
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  832.393.6293
Facsimile:   832.393.6259
Robert.Higgason@HoustonTx.gov

*Attorneys for Defendants-Appellees*

No. 25-20383

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

MIA SEARLES, ADMINISTRATOR OF THE ESTATE OF JALEN RANDLE; TIFFANY RACHEL; WARREN RANDLE; S.S., MINOR,

*Plaintiffs - Appellants*

v.

CITY OF HOUSTON; TROY FINNER; JOHN DOES 1-10; SHANE C. PRIVETTE,

*Defendants - Appellees*

---

On appeal from Civil Action No. 4:24-CV-01534 in the United States District Court for the Southern District of Texas, Houston Division

---

**Certificate of Interested Persons**

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Lee H. Rosenthal.

Appellants:                          Mia Searles, Administrator of the
                                     Estate of Jalen Randel
                                     Warren Randle
                                     Tiffany Rachel
                                     S.S., Minor

Trial and Appellate Counsel for     DiCello Levitt LLP
Appellant:                          Kenneth P. Abbarno
                                     Eli Hare
                                     Robert F. DiCello
                                     Justin Hawal
                                     Joseph T. Frate
                                     Larry Frances Taylor, Jr.
                                     Ben Crump Law Group, PLLC
                                     Benjamin Crump

Appellees:                           City of Houston
                                     Officer Troy Finner
                                     Officer Shane Privette

Trial Counsel for Appellees:         Alexander E. Garcia
                                     CITY OF HOUSTON LEGAL
                                     DEPARTMENT

Appellate Counsel for Appellees:     Robert W. Higgason
                                     CITY OF HOUSTON LEGAL
                                     DEPARTMENT

                                      _/s/ Robert W. Higgason_____
                                     Robert W. Higgason

                                     *Attorney for Defendants – Appellees*

## Statement Regarding Oral Argument

Applying the law to these facts does not present any novel concerns. Appellees believe that oral argument would be of little value but will present oral argument if the Court has any questions or otherwise determines that it would be useful.

# Table of Contents

Page

Certificate of Interested Persons......................................................................ii

Statement Regarding Oral Argument ............................................................ iv

Table of Contents ............................................................................................ v

Table of Authorities ..................................................................................... vii

Statement of Jurisdiction ............................................................................... 1

Statement of the Issues .................................................................................. 2

Statement of the Case .................................................................................... 3

    I.    Factual background ................................................................... 3

    II.   Procedural Background............................................................. 3

Summary of the Argument ............................................................................ 4

Standard of Review ........................................................................................ 5

Argument........................................................................................................ 6

    I.    Officer Privette is entitled to Qualified Immunity because his
        use of force did not violate clearly established law. ...................... 7

        A.    The district court correctly held that Searles failed
             to identify any case that "squarely governs" these
             facts. ................................................................................ 8

        B.    Searles cited cases are materially distinguishable ............... 9

        C.    Fifth Circuit precedents confirm that Officer
             Privette's conduct was not clearly unlawful. ..................... 12

    II.   Officer Privette is entitled to Qualified Immunity because his
        use of force did not violate the Fourth Amendment. .................. 15

A.    Under the *Graham* factors, Officer Privette's use
      of force was not clearly excessive. .................................... 16

B.    Officer Privette's use of force was not objectively
      unreasonable. ................................................................ 19

Prayer for Relief ........................................................................... 21

Certificate of Service ................................................................... 22

Certificate of Compliance ............................................................ 22

# Table of Authorities

**Page(s)**

Cases

*Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023) ............................................. 14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................6, 7, 8, 19

*Baker v Putnam,* 75 F.3d 190 (5th Cir. 1996)................................................10, 12

*Barnes v. Felix*, 145 S. Ct. 1353 (2025) ......................................................15, 19

*Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021) ............................................ 16

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ...............................................5

*Camreta v. Greene*, 563 U.S. 692 (2011) ............................................................6

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011)................................. 19

*Cole v Carson,* 935 F.3d 444 (5th Cir. 2019) ...............................................10, 11

*Crane v. City of Arlington*, 50 F.4th 453 (5th Cir. 2022) ................................... 18

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). ..................................... 4, 16

*District of Columbia v. Wesby*, 583 U.S. 48 (2018)................................4, 7, 8, 10

*Garcia v. Blevins,* 957 F.3d 596 (5th Cir. 2020)....................................13, 14, 20

*Graham v. Connor*, 490 U.S. 386 (1989).......................................... 3, 15, 16, 17

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017)....................................................5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).........................................................6

*Harmon v. City of Arlington*, 16 F.4th 1159 (5th Cir. 2021) .............................. 16

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) ......................................... 17

*Jackson v. Gautreaux*, 3 F.4th 182 (5th Cir. 2021) ......................................16, 19

*Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) ................... 8

*Kisela v. Hughes*, 584 U.S. 100 (2018) ......................................................... 7, 8

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................. 8

*Manis v. Lawson*, 585 F.3d 839(5th Cir. 2009) ............................................... 12

*Mitchell v. Mills*, 895 F.3d 365 (5th Cir. 2018).................................................. 5

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) ...............................5, 7, 8, 11

*Mullenix v. Luna*, 577 U.S. 7 (2015) ............................................................... 7

*Nerio v. Evans*, 974 F.3d 571 (5th Cir.2020)............................................... 9, 10

*Ontiveros v. City of Rosenberg*, 564 F.3d 379, 381 (5th Cir. 2009)................13, 15

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................................................... 6

*Poole v. City of Shreveport,* 13 F.4th 420 (5th Cir. 2021) ..............................10, 11

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ............................................ 17

*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019)...................................................... 8

*Salazar-Limon v. City of Houston*, 826 F.3d 272 (5th Cir. 2016)............. 18, 19, 20

*Tennessee v. Garner,* 471 U.S 1(1985) ......................................................10, 15

*United States v. Place*, 462 U.S. 696 (1983) ................................................... 15

*Vincent v. City of Sulphur*, 805 F.3d 543 (5th Cir. 2015) .................................... 9

*White v. Pauly*, 580 U.S. 73 (2017) ........................................................... 7, 10

Statutes

28 U.S.C. § 1291. ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

42 U.S.C. § 1983 ............................................................................ 1

**Statement of Jurisdiction**

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Appellants' claims arise under a federal statute, 42 U.S.C. § 1983, and the Fourth Amendment. This Court has appellate jurisdiction because this appeal is taken from a final order granting summary judgment based on qualified immunity. ROA.899-925; 28 U.S.C. § 1291. The district court entered final judgment on August 8, 2025, and Plaintiffs timely appealed on September 5, 2025, ROA.926.

## Statement of the Issues

1. Whether Searles met her burden to show that Officer Privette's use of deadly force under the circumstances violated qualified immunity's clearly established prong.

2. Whether Searles met her burden to show that Officer Privette's use of deadly force under the circumstances violated Randle's Fourth Amendment rights.

To the Honorable Fifth Circuit Court of Appeals:

## Statement of the Case

### I.    Factual background

The district court properly stated the material facts. ROA.899.

### II.    Procedural Background

Appellants, Mia Searles, Administrator of the Estate of Jalen Randle, Tiffany Rachel, Warren Randle, and S. S., a minor, (collectively "Searles") sued the City of Houston, former Houston Police Chief Troy Finner, Officer Shane C. Privette, and John Does 1-10 under 42 U.S.C. § 1983, alleging excessive force. ROA.14. After qualified-immunity discovery, Officer Privette moved for summary judgment. ROA.467; ROA.835.

The district court granted summary judgment, holding: (1) no Fourth Amendment violation because Privette's actions were objectively reasonable under *Graham v. Connor*, 490 U.S. 386 (1989), given Randle's threat, evasion, and the severity of his crimes; and (2) qualified immunity applied because Searles failed to cite clearly established law prohibiting Privette's conduct. ROA.899-925.

Searles appealed.

## Summary of the Argument

Officer Privette is entitled to qualified immunity for two independent reasons. *First*, Searles has not shown that Officer Privette's use of deadly force under the circumstances violated clearly established law. To overcome qualified immunity, a plaintiff must point to controlling precedent that puts the illegality of the officer's conduct so "beyond debate" that "every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The district court correctly held that Plaintiffs failed to meet that burden as they did not point to sufficient authority clearly establishing that Officer Privette's conduct violated the law under the specific circumstances he faced.

*Second*, Officer Privette did not violate Randle's Fourth Amendment rights because his use of deadly force was reasonable under the circumstances. The reasonableness of deadly force depends primarily on "whether the suspect poses an immediate threat to the safety of the officers or others." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Here, Officer Privette confronted a suspect who was wanted for violent felonies including felon-in-possession of a firearm, had just fled from police officers attempting to stop him, reached into the passenger seat of the vehicle he just fled from, and turned toward officers holding a dark, oblong object that Privette reasonably perceived as a gun. ROA. 502-

506. In that rapidly unfolding, split-second moment, Privette's single shot was an objectively reasonable response to an imminent threat of serious harm. The district court properly granted summary judgment on this basis as well.

## Standard of Review

This Court reviews a district court's grant of summary judgment based on qualified immunity de novo. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). To prevail on summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But a "qualified immunity defense alters the usual summary judgment burden of proof." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (quoting *Brown*, 623 F.3d at 253). To do this, a plaintiff "must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

**Argument**

Qualified immunity protects a state official from monetary liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). And because "qualified immunity is an immunity from suit that is effectively lost if a case is erroneously permitted to go to trial," *Id.* (cleaned up) (citation omitted), the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Id.* at 232 (citation omitted).

To that end, although a court may address the two prongs of qualified immunity in either order, *Id.* at 236, the Supreme Court has cautioned courts to "think hard, and then think hard again, before turning small cases into large ones" by addressing the constitutional-rights prong when the clearly established prong resolves the case. *Camreta v. Greene*, 563 U.S. 692, 707 (2011); *see Wesby*, 583 U.S. at 62 n.7.

This appeal only involves Officer Privette. Searles brought no arguments against former Houston Police Chief Troy Finner or against the City of Houston. Moreover, the nominal John Does 1-10 were never served and are not part of this appeal. The summary judgment for Officer Privette eliminated all claims against the City of Hoston and former Houston Police Chief Troy Finner.

## I. Officer Privette is entitled to Qualified Immunity because his use of force did not violate clearly established law.

To be "clearly established," a rule of law must be "sufficiently clear that every reasonable official would understand that what he is doing is unlawful" such that "the constitutionality of the officer's conduct is 'beyond debate.'" *Id.* at 63 (cleaned up) (quoting *Ashcroft*, 563 U.S. at 741). "The pages of the *United States Reports* teem with warnings about the difficulty of placing a question beyond debate." *Morrow*, 917 F.3d at 874. And although the "Supreme Court reserves 'the extraordinary remedy of a summary reversal' for decisions that are 'manifestly incorrect,'" the Court "routinely wields this remedy against denials of qualified immunity." *Id.* at 876 (citations omitted); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100 (2018) (per curiam) (summary reversal); *White v. Pauly*, 580 U.S. 73 (2017) (per curiam) (same); *Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam) (same). After all, clearly established law is a "demanding standard" that protects

"all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**A.    The district court correctly held that Searles failed to identify any case that "squarely governs" these facts.**

Qualified immunity "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citation omitted). A court "cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). That is especially true in the context of excessive force, which "is an area of the law 'in which the result depends very much on the facts of each case.'" *Kisela*, 584 U.S. at 104 (citation omitted). As a result, "officers are entitled to qualified immunity" for their use of force "unless existing precedent 'squarely governs' the specific facts at issue." *Id.*

To "squarely govern" a situation, a precedent must "frame the constitutional question with specificity and granularity," *Morrow*, 917 F.3d at 874-75, rather than "a high level of generality," *Ashcroft*, 563 U.S. at 742 (citation omitted). An officer retains qualified immunity unless a constitutional violation

is "clearly established as to the specific facts of the case," which requires a case with "analogous or near-analogous facts." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir.2020)(quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

The district court framed the constitutional question with the required specificity and granularity as follows: "whether, in April 2022, it was clearly established that an officer violates the Fourth Amendment by using deadly force against a suspect, when: that suspect is a convicted felon with a history of illegally possessing firearms; has three active felony warrants; the suspect was fleeing from the police, then turns back to reach into the vehicle he has just exited to retrieve and unidentified object from the passenger side; the suspect then turns to face the officers, holding the object in front of him; one of the officers orders the suspect to show his hands; and that officer shoots the suspect without giving him adequate time to comply with the order." ROA. 920.

The court examined every case Searles cited and correctly held that none squarely govern these facts.

### B.    Searles cited cases are materially distinguishable

Searles fails to identify any new, materially similar precedent and rather reiterate the same cases the district court already considered and rejected as materially distinguishable. They cite no new controlling authority from this Circuit or the Supreme Court that would have put a reasonable officer on notice,

in April 2022, that the conduct at issue here violated clearly established Fourth Amendment law. Searles rely on *Tennessee v. Garner*, 471 U.S 1(1985), *Cole v Carson*, 935 F.3d 444 (5th Cir. 2019), *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021), *and Baker v Putnal*, 75 F.3d 190 (5th Cir. 1996). A clearly established "legal principle must have a sufficiently clear foundation in [controlling] precedent." *Wesby*, 583 U.S. at 63. But none of the cases Searles identifies would have given Officer Privette "'fair notice' that his conduct might be unconstitutional." *See Nerio*, 974 F.3d at 575 (citation omitted). As such, the alleged unreasonableness of Officer Privette's use of force was not clearly established.

As the district court asserted, *Garner* and *Graham* set forth general principles at a high level of generality and do not create clearly established law "outside an 'obvious case.'" ROA.924 (quoting *White v. Pauly*, 580 U.S. 73, 80 (2017)). "This is not an obvious case." *Id.* In *Garner*, the Supreme Court held it was unreasonable to shoot a young, slight, unarmed burglary suspect in the back of the head while he was running away on foot when the officer had no reason to believe the suspect posed any threat. 471 U.S. at 21.

This case has vastly different facts. Here, Officer Privette shot a violent felon who, after evading in a pursuit, ran back to the vehicle, reached into the vehicle, emerged with an object that Officer Privette perceived as a gun, and

turned toward officers. ROA.502-506. Randle had three active felony warrants for aggravated assault of a family member (threatening to shoot the complainant in the face), felon in possession of a firearm, and evading arrest in a motor vehicle. ROA. 490-499. Officer Privette was part of the operation to apprehend Randle for these warrants. ROA. 502-506; ROA. 659. Officer Privette was briefed on these warrants and knew Randle was known to be armed and dangerous. ROA. 659. Officer Privette believed Randle posed an imminent threat based on his actions and history, not merely to prevent escape. These factual distinctions counsel in favor of heeding the Supreme Court's warning against "extending *Garner*." *Morrow*, 917 F.3d at 878.

*Cole v. Carson* involved officers shooting a suicidal teenager who held a gun to his own head, facing away, and threatened no one but himself. *Id.* at 448–49. The suspect had no known violent or criminal history. Randle, however, had a known violent history, just fled from officers who were attempting to arrest him for his felony warrants, returned to the vehicle to grab an object, and turned toward officers holding an object reasonably perceived as a gun.

*Poole v. City of Shreveport* involved an unarmed man in a mental-health crisis with no violent history and no active warrants. *Id.* at 422–23. The court found a jury question because Poole was visibly empty-handed and threatened only himself. *Id.* at 426. Randle's situation was far more dangerous.

11

*Baker v. Putnal* concerned an officer who approached a truck on a chaotic beach with no prior knowledge of the suspect's criminal history or recent flight. *Id.* at 193. Privette knew Randle's full violent history and active warrants and had just pursued him after he evaded officers. ROA. 502-506; ROA. 659-660.

In short, Searles has identified no authority that would have put a reasonable officer on notice that Privette's conduct was unlawful. The district court's conclusion was correct: "The plaintiffs have not pointed to sufficient authority clearly establishing that Privette's conduct violated the law under the specific circumstances he faced." ROA.925.

**C.    Fifth Circuit precedents confirm that Officer Privette's conduct was not clearly unlawful.**

The district court correctly recognized that several Fifth Circuit decisions involving similar facts support qualified immunity.

In *Manis v. Lawson*, officers shot a suspect who ignored repeated commands to show his hands, reached under the driver's seat, and then moved as if he had retrieved an object. 585 F.3d 839, 842 (5th Cir. 2009) The court held the use of deadly force was reasonable even though no gun was ultimately found. *Id.* at 845.  The facts here are even stronger for Officer Privette. Randle's actions of evading officers, ignoring lawful commands of police officers attempting to stop him with emergency lights and sirens activated, and reaching into the

vehicle after a vehicle pursuit are closely analogous. Moreover, the object Randle retrieved was a bag containing a firearm. ROA. 681-682.

In *Ontiveros v. City of Rosenberg*, officers executed a high-risk warrant and shot a suspect who reached into a boot after ignoring commands. 564 F.3d 379, 381 (5th Cir. 2009). The court affirmed qualified immunity because the officer reasonably believed the suspect was reaching for a weapon. *Id.* at 383-85. Randle's reach into the vehicle he had just exited during a high-risk stop is closely analogous — and again, the object Randle went to retrieve was confirmed to be a bag containing a firearm. ROA. 681-682.

In *Garcia v. Blevins* Officer Blevins shot Garcia, who was reportedly armed, in a parking lot. 957 F.3d 596,599 (5th Cir. 2020). Garcia, who had grabbed the gun from a friend's car, ignored Blevins' commands to drop it, moved between vehicles, and attempted to hand it to another person. *Id.* at 599. No prior violent history or warrants were noted, and conflicting accounts disputed whether Garcia ever raised the gun. *Id.* The Officer was entitled to qualified immunity, as no clearly established law prohibited deadly force against a suspect holding a gun and ignoring commands, even without a direct threat. Any factual disputes over Garcia's position were immaterial, as his non-compliance and possession of a gun justified Officer Blevins' perception. The court emphasized that officers are not required to wait until a suspect turn

toward them with a weapon before using deadly force to ensure their safety. *Id*. at 602.

In *Argueta v. Jaradi*, this Court held that a furtive gesture concealing an arm while fleeing justified deadly force even if the gun was never visible. 86 F.4th 1084, 1093 (5th Cir. 2023). "Even if Argueta never touched his gun and his gun remained completely concealed from the moment he exited the vehicle until after he was shot, that fact is immaterial: Argueta did not need to raise (or even show) his gun or make a threatening motion towards the officers because, by suspiciously concealing his right arm as he fled in a way that objectively suggested he was armed and dangerous, he engaged in a furtive gesture justifying deadly force." *Id.* at 1093. Officer Privette saw Randle attempt to flee, return back into the vehicle to grab an object, and faced the officers with an object held in front of his body. ROA 501-506. That object was later to be confirmed to be a bag containing a firearm. ROA. 681-682. As a result, Privette reasonably believed that Randle was holding a weapon.

These cases demonstrate that Officer Privette's conduct was not clearly unlawful. The district court correctly relied on them.

## II.    Officer Privette is entitled to Qualified Immunity because his use of force did not violate the Fourth Amendment.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The inquiry into whether the right against unreasonable seizures was violated requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner*, 471 U.S. at 8 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). After all, "the touchstone of the Fourth Amendment is reasonableness." *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (cleaned up) (citation omitted).

The reasonableness of the seizure "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). As a result, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* And importantly, an "officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

**A.    Under the *Graham* factors, Officer Privette's use of force was not clearly excessive.**

Excessive-force claims "are necessarily fact-intensive" because "whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). To evaluate these facts, courts look to the *Graham* factors: (1) "whether the suspect poses an immediate threat to the safety of the officers or others," (2) "the severity of the crime at issue," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up).

In the context of deadly force, the "threat-of-harm factor typically predominates the analysis." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021). Under this factor, "an officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021) (quoting *Batyukova v. Doege*, 994 F.3d 717, 725 (5th Cir. 2021)).

Here, the threat-of-harm factor weighs in favor of concluding that Officer Privette used reasonable force because a reasonable officer in Privette's position had ample evidence indicating that Randle presented an immediate threat of serious harm. To start, Officer Privette knew Randle's violent history: warrants

for aggravated assault (threatening to shoot someone), felon in possession of a firearm, and evading arrest. ROA. 503-505; ROA.693-694. During the pursuit, Randle's vehicle fled despite lights and sirens from Officers, heightening the risk. *Id.* After the PIT maneuver, Randle exited, started to flee, returned to the vehicle and reached inside and grabbed an object. *Id.*

As the district court noted, Searles provides no plausible argument for Randle's return to the vehicle to grab the object and provide two reasons why their arguments are undermined: "first, the implausibility of a man who had tried to escape the police reaching into a car he had just exited in order to retrieve a bag of toiletries; and second the discovery after the shooting that the bag in fact contained a loaded firearm." ROA. 917-918.

Officer Privette perceived this object as a gun, yelled "show me your hands," and fired once as Randle was faced towards Officer Mansker and himself. ROA. 504-505. This sequence lasted seconds, in a "tense" situation where hesitation could be fatal. *Graham*, 490 U.S. at 397.

Additional Fifth Circuit precedent confirms Officer Privette's reasonableness. In *Hathaway v. Bazany*, deadly force was reasonable against a suspect accelerating a vehicle toward an officer. 507 F.3d 312, 321 (5th Cir. 2007). In *Reese v. Anderson*, shooting a suspect who reached below sightline in a vehicle was justified. 926 F.2d 494, 501 (5th Cir. 1991). In *Salazar-Limon v. City*

*of Houston*, shooting a suspect reaching for his waistband during a stop was reasonable, even despite the fact that the suspect later proved to unarmed. 826 F.3d 272, 278 (5th Cir. 2016). Randle's actions of fleeing, reaching in, emerging with an object, and turning toward officers were even more threatening.

The remaining two *Graham* factors "do not weigh as heavily" on the analysis, but they nonetheless "demand attention." *See Crane v. City of Arlington*, 50 F.4th 453, 465 (5th Cir. 2022). With respect to the severity of the crimes factor, Randle's felonies involved violence, guns, and evasion—far from minor. Aggravated assault with threats to shoot and felon-in-possession are violent and gun-related, further informing Officer Privette's reasonable belief of an imminent threat. ROA.693-694.

And with respect to the final *Graham* factor, Randle actively resisted and evaded: fleeing in a vehicle despite lights and sirens, necessitating a PIT; attempting foot flight; and reaching back into the vehicle to grab an object that Officer Privette perceived as a gun. ROA. 503-505; ROA.693-694 This active resistance weighs heavily in favor of reasonableness.

There is not a single *Graham* factor that supports Searles. The district court correctly concluded that Officer Privette did not violate Randle's Fourth Amendment rights.

**B.     Officer Privette's use of force was not objectively unreasonable.**

Reasonableness, of course, is an objective analysis. *Ashcroft*, 563 U.S. at 736. So "if the circumstances, viewed objectively, justify the challenged action, then subjective intent doesn't matter." *Jackson*, 3 F.4th at 187 (quoting *Ashcroft*, 563 U.S. at 736). "This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts; and it promotes evenhanded, uniform enforcement of the law." *Id.* (quoting *Ashcroft*, 563 U.S. at 736). An officer's use of deadly force may be objectively reasonable "regardless of an officer's negligence" where, "at the moment of the shooting, he was trying to prevent serious injury or death." *Carnaby v. City of Houston*, 636 F.3d 183,188 (5th Cir. 2011). That is because reasonableness depends on "whether the officer or another person was in danger *at the moment of the threat* that resulted in the officer's use of deadly force." *Salazar-Limon*, 826 F.3d at 278 (cleaned up) (citation omitted).   Assessing the reasonableness of Officer Privette's use of deadly force is no different under *Barnes* than it is under *Salazar-Limon*.  Whereas *Salazar-Limon* uses the phrase "moment of the threat" it also places that in the context of the totality of circumstances, which is the emphasis in *Barnes*. 605 U.S. at 74.

Here, Officer Privette's use of deadly force was objectively reasonable under the totality of the circumstances. Privette knew Randle had active felony warrants for aggravated assault (threatening to shoot a family member) and felon-in-possession of a firearm, and that he was known to be armed. ROA 503-505; 693-694. After Randle fled in a vehicle, refused to stop despite lights and sirens, and forced a PIT maneuver, he exited, began to flee on foot, then immediately reached back into the passenger side of the vehicle he had just fled from, retrieved a dark oblong object, and turned to face the officers holding the object. ROA. 502-506. That object was a closed bag containing a firearm. ROA. 681-682. In that rapidly evolving, high-risk encounter, Privette's single shot was a reasonable response to an imminent threat of death or serious bodily injury.

Searles argue that deadly force was unjustified because Privette did not give Randle time to comply with his command. But in split-second scenarios, officers need not wait for a suspect to fire first. Randle's actions left Privette seconds to react. Additionally, when it comes to armed individuals, "we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) (quoting *Salazar-Limon*, 826 F.3d at 279 n.6)).

Officer Privette made the reasonable decision to protect himself and his fellow officers. The Constitution does not require officers to gamble with their lives or the lives of the public when a suspect's actions objectively signal imminent danger. Qualified immunity exists to protect officers who act reasonably in precisely these high-stakes encounters. The district court correctly granted summary judgment, and this Court should affirm.

## Prayer for Relief

For the foregoing reasons, Appellees, Shane Privette, Troy Finner, and City of Houston, ask that this Court affirm the judgment of the district court dismissing this lawsuit, and grant to them all other relief to which they may be entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
CHRISTY L. MARTIN
Chief, Torts/Civil Rights

By:  _/s / Robert W. Higgason_
        Robert W. Higgason
        Senior Assistant City Attorney
        SBN: 09590800
        CITY OF HOUSTON LEGAL DEPARTMENT
        900 Bagby, 4th Floor
        Houston, Texas 77002
        Telephone:   832.393.6481
        Facsimile:    832.393.6259
        robert.higgason@houstontx.gov

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on February 13, 2026 on all counsel of record.

*/s/ Robbert Higgason*
Robert Higgason

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 5,363 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

*/s/ Robert Higgason*
Robert Higgason